UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20683-RAR

**ADAM LACROIX**,

    Plaintiff,

v.

**CITY OF MIAMI**, *et al.*,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendants' Joint Motion to Dismiss ("Motion"), [ECF No. 15], filed on March 28, 2025. Plaintiff filed a Response, [ECF No. 22], on April 11, 2025, and Defendants filed a Joint Reply, [ECF No. 25], on April 23, 2025. The Court having carefully considered the relevant submissions and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

## BACKGROUND

Plaintiff Adam LaCroix brings this action against Defendants City of Miami ("City") and Officer Jenevieve Sadler ("Officer Sadler") challenging the application of the City's Code of Ordinances § 54-6.3 Special Events ("City Code") against Plaintiff on two separate occasions. *See* Compl. ¶¶ 1–2, 49–88. Plaintiff is a Christian who has a "religious mandate to go to [p]ublic [s]paces in the City" and share his "religious, political and social speech message" with people in the City. *Id.* ¶¶ 30–32.

On two instances, Plaintiff was standing and "peacefully sharing his message" in a nonticketed location in Bayfront Park, which at both times was being rented out to the Ultra Music Festival. *Id.* ¶¶ 49–54, 74–78. During the first incident, which occurred on March 26, 2023, a

City officer approached Plaintiff and told him that he "was prohibited from being at that location during the Ultra Music Festival." *Id.* ¶ 55. Plaintiff requested to speak with a supervisor, and Officer Sadler appeared in response to Plaintiff's request. *See id.* ¶¶ 57–58. Officer Sadler confirmed that the location was "rented out" for the Ultra Music Festival. *Id.* ¶ 59. When Plaintiff asked "what would happen if he did not leave the location[,]" Officer Sadler told him that he would be "arrested for trespassing." *Id.* ¶¶ 65–66.

During the second incident, which occurred on March 23, 2024, the officer who approached Plaintiff told him that he needed to have a permit from the City "[w]henever [he] set up, and [had] a spot like this." Compl. ¶ 80. Plaintiff asked the officer multiple times what ordinance he was breaking by "hold[ing] up a sign in a public area." *Id.* ¶¶ 83–87. The officer replied, "We'll be back." *Id.* ¶ 87.

Plaintiff has allegedly experienced similar treatment from the City's officers in the past while located in a non-ticketed area of the Ultra Music Festival. On March 24, 2018, Plaintiff was also standing in a nonticketed area of Bayfront Park during the Ultra Music Festival sharing his religious message. *See id.* ¶¶ 90–95. A City officer approached him and told him that the Ultra Music Festival had a permit for the area. *Id*. When Plaintiff asked whether he was breaking the law by standing where he was standing, the officer told him that he was. *Id.* ¶ 97. When Plaintiff asked for clarification on what law he was breaking, the officer told him, "[Y]ou gotta go" and "Get out." *Id.* ¶¶ 100–101. The officer further stated that Plaintiff would be arrested if he did not leave the area. *See id.* ¶ 102.

Plaintiff brings claims against the City and Officer Sadler, alleging that they violated his constitutional rights to freedom of speech and free exercise of his religion as well as the Florida Religious Freedom Restoration Act ("FRFRA"), Fla. Stat §§ 761.01–761.061. *See* Compl.

Page **2** of 14

¶¶ 128–90. Defendants move to dismiss the Complaint on the grounds that it (1) is a shotgun pleading and (2) fails to state a claim upon which relief can be granted. *See generally* Mot.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff receives the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678. A dismissal for failure to state a claim under Rule 12(b)(6) is a "judgment on the merits" and is "presumed to operate as a dismissal with prejudice unless the district court specifies otherwise." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001)).

To withstand a Rule 12(b)(6) motion, the complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the complaint need not make detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." *Id.* at 678. A complaint is insufficient if it only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Further, the facts alleged in the complaint must be sufficient to cross "the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557. In determining whether a plaintiff has met this burden, "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022) (quoting *Chaparro*, 693 F.3d at 1337). And "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citation modified); *see also Twombly*, 550 U.S. at 554 (finding that allegations do not plausibly allege wrongdoing when they are "consistent with [liability], but just as much in line with a wide swath of" lawful conduct).

## ANALYSIS

### I. Counts I, II, and III—Shotgun Pleading

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Federal Rule of Civil Procedure 10(b) further requires that a pleading "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has routinely condemned "shotgun pleadings" because they are a "waste [of] scarce judicial resources." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

The Eleventh Circuit has identified "four rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. The first type are pleadings that "contain[ ] multiple counts where

each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. Second are pleadings that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third category encompasses pleadings that do "not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1323. And fourth are pleadings that "assert[ ] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Defendants argue that Counts I through III of the Complaint are the third type of shotgun pleading because they each "comingle[ ] numerous claims in a single count against both the City and Officer Sadler collectively." Mot. at 5. In addition, Defendants argue that Count III is also the second type of shotgun pleading because "Plaintiff comingles his FRFRA claim with a *Monell* claim." *Id.*

The Court agrees that Counts I through III of the Complaint are the third type of shotgun pleading because they each commingle multiple causes of action or claims for relief against both the City and Officer Sadler in the same count. Count I appears to allege the following claims under 42 U.S.C. § 1983: (1) a claim against the City that the City Code as applied to Plaintiff violated the Freedom of Speech Clause of the First Amendment, *see* Compl. ¶ 131 ("As applied, the City's Code unconstitutionally imposes a burden on Plaintiff's and other individuals' constitutional rights[.]"); (2) a claim against the City for failure to train its officers, agents, and employees in the correct interpretation and enforcement of the City Code, *see id.* ¶ 134 ("The City is liable pursuant to 42 U.S.C. § 1983 for the failure to train its officers, agents, and employees in the correct interpretation and enforcement of the City's Code."); (3) a claim against the City for violation of the FRFRA, *see id.* ¶ 139 ("The City's actions and omissions were performed with oppression

and/or callous and/or deliberate indifference, and/or a conscious disregard of Plaintiff's rights protected by the United States Constitution and [FRFRA]."); and (4) a claim against Officer Sadler's application of the City Code against Plaintiff in violation of his freedom of speech rights, *see id.* ¶ 142–43 (alleging that Officer Sadler "acted in a way that misused her power," which "deprived [Plaintiff] of his right under the First Amendment to engage in freedom of speech activities prohibited by the City's Code as applied"). Count II alleges the same claims as Count I, substituting the Free Exercise Clause of the First Amendment for the Free Speech Clause. *See id.* ¶¶ 152–53, 156, 164.

Count III is similarly jumbled. It alleges (1) a claim against the City because the City Code as applied to Plaintiff violated FRFRA, *see id.* ¶ 169 ("[FRFRA] prohibits the Defendants from substantially burdening Plaintiff's religious exercise absent the Defendants bringing forth evidence that the burden upon Plaintiff satisfies a compelling government interest in the least restrictive means possible."); *see also id.* ¶ 173 ("The City's enforcement imposes a substantial burden [under FRFRA] on Plaintiff that is not imposed on other individuals."); (2) a claim against the City under § 1983 for failure to train its officers, agents, and employees in the correct interpretation and enforcement of the City Code, *see id.* ¶ 179 ("The City is liable pursuant to 42 U.S.C. § 1983 for the failure to train its officers, agents, and employees in the correct interpretation and enforcement of the City's Code."); (3) violations of Plaintiff's freedom of speech rights, *see id.* ¶ 181 ("Plaintiff's rights to freedom of speech and exercise of religion should have been protected[.]"), and (4) a claim against Officer Sadler for violating the FRFRA and/or the First Amendment under § 1983, *see id.* ¶ 187 ("SADLER's actions were performed under color of state law in that she claimed to be performing an official duty, but her acts were outside the limits of lawful authority

and abusive in manner, and she further acted in a way that misused her power.").[1] Count III's heading also confusingly mixes a constitutional § 1983 claim with a FRFRA claim, stating that Plaintiff brings a § 1983 claim for the "UNCONSTITUTIONAL CODE AS APPLIED AGAINST CITY AND SADLER" and also that "DEFENDANTS' ACTIONS VIOLATE FLORIDA'S RELIGIOUS FREEDOM RESTORATION ACT." *Id.* at 24

In Counts I through III, Plaintiff also fails to specify what acts or omissions the City is responsible for, including whether Plaintiff seeks to hold the City liable for Officer Sadler's actions, the actions of the officer who approached Plaintiff on March 23, 2024, or other alleged acts or omissions. *See generally* Compl. ¶¶ 128–90. Counts I through III therefore also display characteristics of the fourth type of shotgun pleading, committing the "rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. Further, it is difficult to distinguish Plaintiff's allegations in Counts I through III that the City failed to train its employees in the correct interpretation and enforcement of the City Code from Plaintiff's claim in Count IV (failure to train or supervise against the City). *Compare id.* ¶¶ 128–90, *with id.* ¶¶ 191–204.

Because Counts I through III each assert multiple claims in one count against both Defendants, these counts are impermissible shotgun pleadings. Therefore, the Court dismisses Counts I through III without prejudice and with leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that under Rule 15, leave to amend should be freely given absent a

---

[1] Defendants argue that the fact Count III brings claims under both FRFRA and § 1983 makes it the second type of shotgun pleading, one "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Mot. at 5 (quoting *Weiland*, 792 F.3d at 1321–22). The Court disagrees that Count III is the second type of shotgun pleading. Rather, the fact that Count III contains *both* a FRFRA and a § 1983 First Amendment claim further supports that it is the third type of shotgun pleading.

showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment").

**II.   Count IV—Failure to State a Claim**

Defendants also maintain that all counts in Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted. *See* Mot. at 5–18. Because the Court finds dismissal is warranted for Counts I through III as they are shotgun pleadings, the Court need only address the sufficiency of the pleadings on the merits as to Count IV. Defendants argue that Count IV—Plaintiff's claim against the City for failure to train or supervise—should be dismissed because it does not sufficiently plead the elements of a § 1983 municipal liability claim for failure to train pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). *See* Mot. at 10–17.

Section 1983 does not operate to hold local governments liable "solely upon a respondeat superior theory." *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989). A plaintiff may maintain a § 1983 claim against a municipality "only where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that "under § 1983, local governments are responsible only for 'their *own* illegal acts'" (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986))). Consequently, a municipality is only liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. It is only in these circumstances that the challenged actions "are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. 480; *see*

*also Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("The Supreme Court has placed strict limitations on municipal liability under § 1983.").

Accordingly, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his or her constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that policy or custom caused the constitutional violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton*, 489 U.S. at 388). A plaintiff can demonstrate official policy for purposes of establishing § 1983 liability by "showing a government policy of inadequate training or supervision." *See Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 799 (11th Cir. 2014) (citations omitted).

But "[s]ince a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants[.]" *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton*, 489 U.S. at 388–89). In other words, to state a § 1983 claim for failure to train where there is no express oral or written policy of inadequate training or supervision, a municipality's failure to train its employees must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (quoting *City of Canton*, 489 U.S. at 388).

### A. *Plaintiff fails to allege sufficient facts showing a widespread custom or pattern of similar constitutional violations*

In Count IV, Plaintiff seeks *Monell* liability based on a theory that the City "fail[ed] to train its officers, agents, and employees in the correct interpretation and enforcement of the City's Code." Compl. ¶ 192. Plaintiff does not rely on an officially promulgated policy as the basis of

his claim, as he does not allege that the City Code is unconstitutional or itself creates constitutional violations. Instead, Plaintiff alleges that "[t]he City failed to implement and enforce policies and procedures to adequately supervise and adequately train its officers, agents, and employees so as to prevent the constitutional violations [alleged in the Complaint.]" *Id.* ¶ 201. Thus, Plaintiff's claim relies on a theory of unofficial practice or custom. Accordingly, for Count IV to survive dismissal, Plaintiff must plausibly allege (1) that the City had a policy of failing to train its employees "evidenc[ing] a 'deliberate indifference' to the rights of its inhabitants," and (2) this deliberate indifference led to a violation of Plaintiff's constitutional rights. *See Gold*, 151 F.3d at 1350.

Plaintiff's allegations are insufficient to meet the "high bar" for municipal liability. *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018). To establish deliberate indifference for purposes of *Monell* liability, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350–51 (collecting cases). "Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Mingo*, 592 F. App'x at 799–800 (citations omitted). However, without actual or constructive "notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold*, 151 F.3d at 1351; *see also Connick*, 563 U.S. at 61 ("Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may

be deemed deliberately indifferent if the policymakers choose to retain that program." (citing *Brown*, 520 U.S. at 407)).

Here, Plaintiff does not allege sufficient facts supporting a widespread pattern of similar constitutional violations by untrained employees, let alone that the City knew of a need to train and made a deliberate choice not to do so. *See generally* Compl; *see also McDowell*, 392 F.3d at 1289 (explaining that incidents must stem from a "demonstrated practice," as "[t]his prevents the imposition of liability based upon an isolated incident.") (citation omitted)). While Plaintiff does allege that he had an interaction with police officers at the Ultra Music Festival in 2018 similar to the 2023 and 2024 incidents that form the basis of his allegations, *see id.* ¶¶ 89–102, that single incident is plainly insufficient to establish a widespread custom or pattern of similar constitutional violations. *See Guerrera v. Palm Beach Cty. Sheriff's Office*, 657 F. App'x 886, 892–93 (11th Cir. 2016) (explaining that when attempting to state a *Monell* claim based on custom, "[a] pattern of similar constitutional violations . . . is ordinarily necessary, because a single violation is not so pervasive as to amount to a custom.") (citations omitted)); *Diaz v. Miami Dade County*, 424 F. Supp. 3d 1345, 1362 (S.D. Fla. 2019) (dismissing complaint where plaintiff's allegations failed to establish "a custom of the County that is 'so permanent and well settled as to constitute a 'custom or usage' within the force of law.'") (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988))).

Plaintiff also attempts to support his claim for relief with conclusory allegations that the City's employees "repeatedly enforced the City's Code in a manner opposing Plaintiff's rights" and that "such enforcement actions have become the custom, policy and practice of the City" without providing any factual basis in support of his allegations. *Id.* ¶ 197; *see Rodriguez v. Quinones*, 508 F. Supp. 3d 1198, 1207 (S.D. Fla. 2020) ("Because Plaintiff fails to . . . explain why [the past incidents] are the result of a specific policy or custom that caused Plaintiff's alleged

constitution deprivations, the Second Amended Complaint fails to state a *prima facie* claim under *Monell*."). Plaintiff also avers, in a similarly conclusory manner, that the City "failed to implement and enforce policies and procedures to adequately supervise and adequately train its officers, agents, and employees so as to prevent the constitutional violations"—but does not allege any factual content to establish repeated examples of a failure to supervise or failure to train. *Id.* ¶ 201.

In short, Plaintiff's conclusory statements and allegation of one past similar incident are insufficient to plausibly claim that the City was deliberately indifferent to a known pattern of constitutional violations by failing to train its employees on proper enforcement of the City Code.

### B. Plaintiff fails to allege sufficient facts showing that the alleged failure to train was so obvious that it amounted to deliberate indifference

Plaintiff also proceeds on a "single incident" theory for *Monell* liability. *See* Resp. 11–12; *see also* Compl. ¶ 196. For a plaintiff to succeed on a "single incident" theory of *Monell* liability, the underlying issue must be "so obvious" that the failure to provide training on that subject matter amounts to deliberate indifference. *Weiland*, 792 F.3d at 1329 (citing *Gold*, 151 F.3d at 1352). Plaintiff asserts that the City's need to train and supervise its employees on how to enforce the City Code "to allow Plaintiff to exercise his rights" during a special event is "plainly obvious" because "the City's Code specifically states Plaintiff's rights to freedom of speech and exercise of religion should be protected during a special event." Compl. ¶ 196. However, Plaintiff's allegations fall short of showing a failure to train that was so obvious that it amounted to deliberate indifference.

As the Eleventh Circuit explained in *Mingo*, "[t]he Supreme Court has cautioned that the exception creating municipal liability under § 1983 for failure to train applies in only a very narrow range of circumstances and a municipality's culpability 'is at its most tenuous where a claim turns on failure to train.'" 592 F. App'x at 800 (quoting *Connick*, 563 U.S. at 61). Indeed, the Supreme

Court has provided only a single hypothetical example in *dicta* recognizing an obvious need for training: in the use of deadly force where firearms are provided to police officers. *Id.* at 800–01 ("[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." (quoting *City of Canton*, 489 U.S. at 390 n.10)).

Plaintiff's contention that the City failed to train or supervise its employees regarding the enforcement of the City Code does not even come close to the narrow range of circumstances giving rise to *City of Canton*'s hypothetical liability for a municipality based on a single incident. *See, e.g.*, *Brown*, 520 U.S. at 409–10 (holding isolated incident of sheriff's inadequate screening of deputy did not create such an obvious risk that it alone established the municipality's deliberate indifference to the risk that the deputy would use excessive force); *Gold*, 151 F.3d at 1352 (holding plaintiff's "contentions that the police officers were inadequately trained and/or supervised regarding the disorderly conduct statute and the proper response to handcuff complaints fall[ ] far short of the kind of obvious need for training that would support a finding of deliberate indifference to constitutional rights on the part of the city" (internal quotation marks and citation omitted)); *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 942 (11th Cir. 2017) ("The Supreme Court has never determined that the need for 'more or different' training was obvious.").

"Unlike the risk from a particular glaring omission in a training regimen," the risk from the City's alleged failure to train its employees on the enforcement of the City Code so as to not violate Plaintiff's constitutional rights "is not obvious in the abstract" and therefore falls short of supporting a plausible claim of deliberate indifference. *See Gold*, 151 F.3d at 1352 (quoting *Brown*, 520 U.S. at 410)); *see also Ratlieff v. City of Fort Lauderdale*, Case No. 22-CV-61029,

2023 WL 3750581, at *16–17 (S.D. Fla. June 1, 2023) (explaining the "so obvious" theory of failure to train liability articulated in *City of Canton* and dismissing complaint where plaintiff failed to establish the need to train officers "was 'obvious' enough to trigger municipal liability without any evidence of prior incidents putting the municipality on notice—a high bar under existing caselaw").

In sum, Plaintiff does not plausibly plead that the City was deliberately indifferent to his constitutional rights by failing to train its employees. Accordingly, the Court dismisses Count IV without prejudice and with leave to amend. *See Foman*, 371 U.S. at 182.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Joint Motion to Dismiss, [ECF No. 15], is **GRANTED**.

2. The Complaint, [ECF No. 1], is **DISMISSED** *without prejudice and with leave to amend*.

3. Plaintiff shall file an Amended Complaint in compliance with this Order and all applicable pleading standards on or before **September 9, 2025**. Failure to timely file an Amended Complaint shall result in the dismissal of this case without further notice.

**DONE AND ORDERED** in Miami, Florida, this 26th day of August, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**